SHIRLEY S. ABRAHAMSON, J.
¶ 118. (dissenting). When the defendant was 15 years old, he was interrogated by the police about a murder that had *423 recently taken place. After roughly 11 hours in custody, the defendant confessed to the crime. The defendant now seeks to suppress his confession.
¶ 119. The defendant argues that admission of his confession would violate the federal and state constitutions because the confession was not voluntary.[1] The defendant further argues that admission of his confession would violate Wis. Stat. § 938.195 (2007-08),[2] which requires that "any custodial interrogation of a juvenile that is conducted at a place of detention" be recorded.[3]
¶ 120. I conclude that the defendant's confession was not voluntary under the federal and state constitutions. Because admission of the confession was not harmless error, the confession should be suppressed.
¶ 121. A confession is voluntary if it is "the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist."[4]
*424 ¶ 122. Whether a confession is voluntary and thus constitutionally valid depends on the totality of the circumstances surrounding the confession.[5] In conducting this totality-of-the-circumstances review, a court weighs a defendant's personal characteristics (including the defendant's "age, education and intelligence . . . and prior experience with law enforcement") against the interrogation methods employed by the State (including "the length of questioning"; the presence of a parent, attorney, or other interested adult; and "whether the defendant was informed of the right to counsel and right against self-incrimination").[6]
¶ 123. Courts must exercise "special care" when assessing the voluntariness of a juvenile's confession,[7] as children are "uncommonly susceptible" to suggestive and coercive police interrogation techniques.[8]
¶ 124. In the instant case, I weigh the relevant personal characteristics of the defendant against the interrogation methods employed by the State as follows:
• The defendant was 15 years old when he confessed. His young age is a factor weighing against the voluntariness of the confession.
• The defendant was in eighth grade at the time of his confession. His relatively low education level is a factor weighing against the voluntariness of the confession.
*425 • The defendant exhibits borderline intellectual functioning.[9] The defendant's low intelligence level is a factor weighing against the voluntariness of the confession.
• The defendant has a history of learning disabilities. The defendant may therefore have struggled to understand his Miranda rights and the consequences of waiving them. Consequently, this factor weighs against the voluntariness of the confession.
• The defendant was diagnosed with at least three mental health issues: attention deficit/hyperactivity disorder, mood disorders, and conduct disorders. In addition, he has previously displayed problems with substance abuse. The defendant's mental health issues and behavioral problems are factors weighing against the voluntariness of the confession.
• The defendant had previous experience with law enforcement at the time of his confession — namely, two prior arrests that both resulted in misdemeanor delinquency findings. His experience with law enforcement was not extensive and does not weigh in favor of voluntariness.
• The defendant was in custody for about 11 hours before he confessed. During that time, the defen *426 dant was repeatedly interrogated by two sets of detectives for a total of nearly six hours.[10] The duration of the interrogation weighs against the voluntariness of the confession.
• The defendant did not confer with a friendly adult at any point during the interrogation. The absence of a parent, attorney, or other interested adult at the defendant's interrogation weighs against the voluntariness of the confession.[11]
• The defendant did not demonstrate that he understood his right to counsel.[12] At one point, a detective stated as follows: "If you decide to answer questions now without a lawyer present, you have *427 the right to stop questioning at any time you wish and the right to ask for and to have a lawyer at any time you wish, including during questioning." The detective then asked, "What does that mean in your own words?" The defendant replied by stating: "That mean like, if I'm talking to you all, then I don't want to say no more, I can just, um, don't say nothing."
The defendant explained his right to stop speaking but did not demonstrate that he understood he could ask for an attorney or have an attorney present at any time (including during questioning). This exchange, which suggests the defendant did not fully grasp his Miranda rights, weighs against the voluntariness of the confession.
• The detectives' conduct in interrogating the defendant was not egregious.[13] The detectives spoke in a conversational tone and were not unduly aggressive in their demeanor while they isolated the defendant in the interrogation room. However, the detectives employed psychological tactics to which juveniles and those with low intelligence are especially vulnerable.[14] For example, the detectives continually challenged the defendant's denials of culpability, urged the defendant to tell the truth, and misinformed the defendant about various aspects of their investigation. The use of these psychological techniques in the instant case exceeded *428 the defendant's ability to resist and weighs against the voluntariness of the confession.
• The cumulative effect of these factors under the totality of the circumstances test weighs against the voluntariness of the confession.
¶ 125. In sum, the defendant, a 15-year-old eighth grader of borderline intelligence, was in custody for roughly 11 hours; was interrogated for periods totaling nearly six hours; was subject to psychological interrogation methods; had no parent, attorney, or interested adult present during his interrogation; and did not demonstrate an understanding of his Miranda rights before making incriminating statements to the police.
¶ 126. The personal characteristics of the defendant and the interrogation methods employed in the present case are substantially similar to those in State v. Jerrell C.J., 2005 WI 105, 283 Wis. 2d 145, 699 N.W.2d 110, and the same result should ensue. The confession in Jerrell C.J. was suppressed.
¶ 127. Considering the factors outlined above and the court's holding in Jerrell C.J., and exercising special care as the case law compels me to do, I conclude that the defendant's confession was not voluntary and thus is not constitutionally valid. Because admission of the confession was not harmless error,[15] the confession should be suppressed. I would reverse the decision of the court of appeals and remand the cause for further proceedings.
*429 ¶ 128. For the reasons set forth, I dissent.
¶ 129. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 See State v. Jerrell C.J., 2005 WI 105, ¶ 17, 283 Wis. 2d 145, 699 N.W.2d 110 (explaining that if a defendant's confession is constitutionally "involuntary," then its admission violates the defendant's due process rights under the Fourteenth Amendment of the federal constitution and Article I, Section 8 of the Wisconsin Constitution). See also majority op., ¶ 55.

 All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

 Because my analysis of the constitutional issue is dispositive, I would not reach the recording statute issue.

 Majority op., ¶¶ 55, 65 (quoting State v. Lemoine, 2013 WI 5, ¶ 17, 345 Wis. 2d 171, 827 N.W.2d 589). See also Jerrell C.J., 283 Wis. 2d 145, ¶ 16.

 Majority op., ¶ 56; Jerrell C.J., 283 Wis. 2d 145, ¶ 20.

 Majority op., ¶ 56 & n.17. See also Jerrell C.J., 283 Wis. 2d 145, ¶ 30; State v. Hoppe, 2003 WI 43, ¶ 39, 261 Wis. 2d 294, 661 N.W.2d 407.

 In re Gault, 387 U.S. 1, 45 (1967); Haley v. Ohio, 332 U.S. 596, 599 (1948).

 Jerrell C.J., 283 Wis. 2d 145, ¶ 26.

 An evaluation of the defendant performed at the State's request determined that the defendant functions in the "borderline" range of intelligence, meaning his intelligence quotient (IQ) score is between 71 and 84. An evaluation of the defendant performed at the defendant's request similarly concluded that the defendant's IQ score falls between 69 and 79. Intellectual disability, also known as mental retardation, is commonly defined as an IQ score of 70 or below. See MedLine Plus, U.S. Nat'l Library of Medicine, "Intellectual disability" (last updated May 10, 2013), http://www.nlm.nih.gov/medlineplus/ency/article/001523.htm.

 "Police complete nearly all interrogations of juveniles and adults in less than one or two hours. By contrast, they extract the vast majority of false confessions only after interrogating suspects for six hours or longer ...." Barry C. Feld, Police Interrogation of Juveniles: An Empirical Study of Policy and Practice, 97 J. Crim. L. & Criminology 219, 308 (2006).

 The record does not reveal whether the police actually contacted the defendant's parents, although they informed the defendant that they had. It is undisputed, however, that the defendant had no opportunity to confer with a friendly adult during the interrogation. "[T]he failure 'to call the parents for the purpose of depriving the juvenile of the opportunity to receive advice and counsel' will be considered 'strong evidence that coercive tactics were used to elicit the incriminating statements.'" Jerrell C.J., 283 Wis. 2d 145, ¶ 43.

 See Miranda v. Arizona, 384 U.S. 436, 444 (1966); Jerrell C.J., 283 Wis. 2d 145, ¶ 20 (stating that courts determining the constitutional validity of confessions should consider "whether the defendant was informed of the right to counsel and right against self-incrimination").
A forensic evaluation of the defendant performed at the request of the defendant's attorneys concluded that "significant questions exist as to [the defendant's] competence to waive his Miranda rights" and that "significant concerns exist regarding the reliability of [the defendant's] confession."

 "[T]he totality of the circumstances standard does not require that egregious or outrageous police conduct be present____" Hoppe, 261 Wis. 2d 294, ¶ 58.

 "When used against vulnerable suspects, standard police interrogation techniques are especially apt to lead to false confessions. Juveniles and the mentally retarded are the most vulnerable to modern psychological interrogation techniques." Jerrell C.J., 283 Wis. 2d 145, ¶ 104 (Abrahamson, C.J., concurring).

 An error is harmless if the beneficiary of the error (here the State) proves beyond a reasonable doubt that the error complained of did not contribute to the result. State v. Hale, 2005 WI 7, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637. The State cannot meet its burden of proof in the instant case.